UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PAUL POZNIAK,

                Petitioner,        Case No. 1:14-cv-12649
                                                 Hon. Thomas L. Ludington

v.

SHIRLEE HARRY,[1]

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, AND DENYING MOTION FOR DISCOVERY**

On July 7, 2014, Michigan Department of Corrections Inmate Paul Pozniak filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner Pozniak, was convicted after a jury trial in the Macomb Circuit Court of first-degree murder. MICH. COMP. LAWS § 750.316. Petitioner was sentenced to life imprisonment.

In the petition, Pozniak asserts eight grounds for relief: (1) insufficient evidence was presented at Petitioner's trial to establish his identity as the perpetrator, (2) Petitioner's counsel was ineffective for failing to object to the admission of testimony, (3) Petitioner was denied his right to counsel at a photographic line-up identification procedure, (4) the police and prosecutor committed misconduct by misrepresenting the physical evidence, (5) the trial court lacked subject matter jurisdiction to try Petitioner, (6) Petitioner was abandoned by his trial counsel for failing to

---

[1]The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Petitioner has been transferred to the Brooks Correctional Facility where Shirlee Harry is Warden.

raise a jurisdictional challenge, (7) Petitioner was denied the effective assistance of appellate counsel, and (8) the prosecutor failed to protect Petitioner's constitutional rights by proceeding to trial in a court without jurisdiction. Petitioner's claims are without merit or barred by procedural defaults which occurred in state court. Therefore, the petition will be denied. For similar reasons, Petitioner's request for a certificate of appealability, permission to appeal in forma pauperis, and motion for discovery will be denied.

**I.**

The relevant facts relied upon by the Michigan Court of Appeals are presumed to be correct, pursuant to 28 U.S.C. § 2254(e)(1), and will be recited verbatim. *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's conviction arises from the February 23, 2010, strangulation of 84-year-old Charles Taylor in his home in Warren, Michigan. The prosecution's theory was that defendant, the estranged son of Taylor's long-time friend, knew that Taylor had money, attacked him in his home, ransacked his home looking for valuables, and stole his wallet. Defendant's DNA was discovered on Taylor's left and right hands, as well as the inside of Taylor's right rear pants pocket, where Taylor kept his wallet. At trial, the defense argued that defendant's DNA was on Taylor's hands because Taylor shook defendant's hand and hugged him during a prior visit, and that a secondary transfer from that contact caused the presence of defendant's DNA inside Taylor's pants pocket. The defense presented an alibi defense, and defendant and his girlfriend both testified that they were together on the day of Taylor's death.

*People v. Pozniak*, No. 306405, 2013 WL 331564, at *1 (Mich. Ct. App. Jan. 29, 2013).

Following his conviction, Petitioner filed an appeal of right. His appointed appellate counsel filed a brief on appeal raising the following two claims:

> I. Defendant's conviction for first-degree murder should be reversed because the prosecution failed to present constitutionally sufficient evidence to sustain his conviction, where the only credible evidence in the case seeking to identify Mr. Pozniak as the offender was the circumstantial evidence of the presence of his skin

cells at the scene, and the prosecution did not prove that those cells could only have been left at the house during the alleged commission of the homicide.

II. Paul Pozniak received constitutionally ineffective assistance of counsel when his trial counsel did not timely object to inadmissible testimony, under Michigan Rules of Evidence 701 and 801, concerning Alphonse Pozniak's reaction to his son's arrest in connection with the death of Charles Taylor, testimony which should have resulted in multiple objections and a request for a curative jury instruction.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id*. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same two claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Pozniak*, 833 N.W.2d 918 (Mich. 2013) (Table).

Petitioner initiated the present action by filing a petition for writ of habeas corpus raising the two claims he presented to the state courts in his direct appeal. Petitioner also filed a motion to stay the case so that he could return to the state courts and pursue relief with respect to what now form his third through eighth habeas claims. The Court granted the motion, ECF No. 6, and Petitioner filed a motion for relief from judgment in the state trial court, raising his new claims. The trial court denied the motion for relief from judgment, finding that each of the new claims lacked merit. ECF No. 18, Ex. 13.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals which raised the same claims. The Michigan Court of Appeals denied the delayed application for leave to appeal, finding that

> defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The defendant alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to

previously raise the issues and actual prejudice from the irregularities alleged, and ha[d] not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b).

ECF No. 18, Ex. 14 at 1.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was denied with citation to Rule 6.508(D). *People v. Pozniak*, 884 N.W.2d 790 (Mich. 2016) (Table).

Petitioner then returned to this Court and filed an amended petition, raising his third through eighth claims, along with a motion to lift the stay and reopen the case. The motion was granted. ECF No. 12. Respondent subsequently filed a responsive pleading, and Petitioner filed a reply brief indicating that he wished to raise both the claims presented on direct appeal and on state post-conviction review in this proceeding. Petitioner also filed a motion for discovery, ECF No. 21, seeking information to support his claim that the prosecutor misrepresented the physical evidence.

## II.

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III.

### A.

Petitioner's first claim challenges the sufficiency of the evidence presented at trial to sustain his conviction. He asserts that there was insufficient evidence admitted at trial to prove beyond a reasonable doubt that he was the person who committed the crime.

In reviewing sufficiency-of-the-evidence claims under the AEDPA, the Court must give the state court's judgment a double layer of deference. *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009). The Court first considers whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 205 (citing *Jackson*, 443 U.S. at 319). Second, even if a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, the Court must defer to the state court's sufficiency determination as long as it is not unreasonable. *Id*. (citing 28 U.S.C. § 2254(d)(2)).

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected this claim on the merits as follows:

> Defendant does not contest that a premeditated murder was committed, but asserts that there was no credible evidence that he was the person who committed the murder. Because there were no eye-witnesses to the actual crime, defendant's identity as the killer was established by circumstantial evidence. But our deferential standard of review "is the same whether the evidence is direct or circumstantial," and it is well established that "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich. at 400 (citation omitted).
>
> Evidence was presented that Taylor was a long-time friend of defendant's father, but that defendant had not seen Taylor for more than 30 years. Taylor lived alone, had a regular routine, and was known to carry money in his wallet and to keep large sums of money in his meticulously organized home. Taylor's neighbor, Dennis Lohmeier, placed defendant on Taylor's street on the day Taylor was killed. Lohmeier selected defendant's photograph "immediately" from a total of 18 individuals, presented in three different photo arrays. Lohmeier testified at trial that he was 100 percent certain that defendant was the person he observed and conversed with about snow removal on the day Taylor died. After their brief conversation, Lohmeier observed defendant, who was wearing a dark hooded sweatshirt and jeans, walk down the street. Another neighbor, Janice Knoll, observed a man wearing a dark hooded sweatshirt and jeans walk up Taylor's walkway to Taylor's door, and walk directly into Taylor's house after the door was

opened. This seemed unusual to Knoll because in her 35 years as Taylor's neighbor, he rarely had company. The police found no evidence of a forced entry, although Taylor's bedrooms had been ransacked, as if someone was searching for something.

Defendant's DNA was found on Taylor's right and left hands and on the inside of Taylor's right rear pants pocket. Testimony indicated that Taylor always kept his wallet in his right rear pants pocket. Expert forensic testimony indicated that, of the three places that defendant's skin cells were found, the inside of his pants pocket contained the largest source of defendant's DNA and garnered the strongest results. With regard to the presence of his DNA, defendant testified that he had taken a 25–mile bus ride from his Pontiac home to visit Taylor on the day before Taylor was killed, and that he shook Taylor's hand and hugged Taylor during the visit. Testimony indicated that there was a heavy snowfall on the day that defendant claims to have taken the lengthy bus ride to visit Taylor. Defendant denied being at Taylor's house or in Taylor's neighborhood on the day Taylor was killed.

Testimony from both defendant and his father, Alphonse Pozniak . . . , revealed that defendant had little to no contact with Taylor for several decades before visiting him in February 2010. Pozniak testified that the 52–year–old–defendant last saw Taylor when defendant was 12 or 13 years old, and Pozniak could think of no reason why defendant would have gone to Taylor's house in February 2010. Although defendant testified that he had recently reconnected with Taylor before Taylor was killed, defendant did not attend Taylor's funeral and, although defendant spoke with his father after supposedly visiting Taylor, defendant did not mention that he had seen or talked to Taylor, who was his father's close friend.

Viewed in a light most favorable to the prosecution, the evidence of Taylor's known tendencies, Lohmeier's identification of defendant as being on Taylor's street on the day Taylor was killed, Knoll's observation of a similarly dressed man walking directly into Taylor's home, the presence of defendant's DNA in Taylor's back pocket where he kept his wallet, and the evidence that defendant had not been in contact with Taylor for many years and had no reason for being at Taylor's home, considered together, was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant was the person who stole Taylor's wallet and strangled him during the criminal episode. Although defendant argues that there was evidence that his DNA could have been transferred innocently during a prior visit, and that Lohmeier's identification of him was not credible, these challenges are related to the weight of the evidence rather than its sufficiency. *People v. Scotts*, 80 Mich. App. 1, 9 (1977). These same challenges were presented to the jury during cross examination and closing argument. This Court may not

> interfere with the jury's role of determining issues of weight and credibility. *Wolfe*, 440 Mich. at 514. The evidence was sufficient to support defendant's conviction of first-degree premeditated murder.

*Pozniak*, 2013 WL 331564, at *1–3.

This decision was not an objectively unreasonable application of the clearly established Supreme Court standard. Although there was no direct evidence identifying Petitioner as the perpetrator, there was ample circumstantial evidence supporting the inference that Petitioner entered the victim's house around the time of the robbery-murder and committed the crime. Mere suspicion and speculation cannot support logical inferences, *United States v. Bennett*, 621 F.3d 1131, 1139 (9th Cir. 2010), but circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction, *United States v. Aponte*, 619 F.3d 799, 804 (8th Cir. 2010); *United States v. Shabban*, 612 F.3d 693, 696 (D.C. Cir. 2010); *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010). Therefore, where a verdict relies solely on circumstantial evidence, the question the court must answer is whether "each link in the chain of inferences" the jury relied upon is "sufficiently strong to avoid a lapse into speculation." *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009). "Complicating matters is that in circumstantial cases 'we face head-on the disturbing truth that guilty verdicts rest on judgments about probabilities and those judgments are usually intuitive rather than scientific.'" *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009) (quoting *Stewart v. Coalter*, 48 F.3d 610, 614 (1st Cir. 1995)).

Here, the circumstantial evidence presented—as aptly outlined by the Michigan Court of Appeals—was sufficiently strong to avoid a lapse into mere speculation. It should be noted that Petitioner's defense was *not* that he was innocently at the victim's house on the date of the crime,

thus explaining the presence of his DNA on the victim. Rather, Petitioner testified that he was at the victim's home on the *previous* day and that his DNA must have remained on the victim through the following day. ECF No. 18, Ex. 6 at 94–96. In contrast, the eyewitnesses, Dennis Lohmeir, and to a limited extent Janice Knoll, placed Petitioner at the scene on the date of the crime. A jury may have resolved the factual dispute as to which day Petitioner was at the victim's house in favor of the prosecutor's witnesses, and that decision may have led the jury to conclude that Petitioner's testimony regarding shaking the victim's hand and hugging him the previous day was likewise not credible.

Even so, "the Supreme Court has given little weight to a defendant's innocent explanation of the evidence." *United States v. Nevils*, 598 F.3d 1158, 1164 n.2 (9th Cir. 2010). "[I]t is well settled that when a defendant 'offers an innocent explanation for the incriminating facts proved by the government, the jury is free to disbelieve it.'" *United States v. Hughes*, 505 F.3d 578, 594 (6th Cir. 2007) (brackets omitted) (quoting *United States v. Schreane*, 331 F.3d 548, 562 (6th Cir. 2003)). Accordingly, Petitioner's claim that his DNA was found on the victim because of an encounter with the victim occurring on the previous day, does not render the evidence constitutionally insufficient to support the jury's verdict. Rather, the two eyewitnesses whose testimony viewed most favorably to the prosecution placed him at the scene and time of the crime when taken together with the evidence that Petitioner's DNA was found on the victim's hand and in his pocket, was sufficient for the Michigan Court of Appeals to reject Petitioner's claim without unreasonably applying the *Jackson* standard. Petitioner's first claim is therefore without merit.

**B.**

In his second claim, Petitioner argues that his trial attorney provided ineffective assistance of counsel. Petitioner argues that his attorney failed to object to inadmissible hearsay and inadmissible lay opinion testimony. Again, after reciting the controlling constitutional standard for ineffective assistance of counsel claims, the Michigan Court of Appeals rejected the claim on the merits as follows:

> On direct examination by the prosecutor, Taylor's daughter, Cassandra Skladzien, testified about a telephone call that she made to defendant's father, Alphonse Pozniak, on the day defendant was arrested for Taylor's murder. The following exchange occurred:
>
> Q. And what was your purpose of calling him?
>
> A. I was hysterical. I wanted him to know I didn't blame him. He was hysterical that his son would do such a thing.
>
> * * *
>
> Q. Was he hysterical as well?
>
> A. Yes.
>
> Q. Was he excited, meaning hysterical, excited emotional?
>
> A. Emotional.
>
> Q. What, if anything did he say at the time?
>
> A. *He couldn't believe his son had killed his best friend.* [Emphasis added.]
>
> During defense counsel's cross-examination of Skladzien, the following exchange occurred:

Q. Now, [the prosecutor] asked you about a statement Mr. Alphonse Pozniak made when he was excited or—excitable, we'll say or emotional. That he couldn't believe that Paul had killed his best friend?

A. Yes.

* * *

Q. Are you—are you aware of any specific foundation or reason why he would make that statement, other than it being on the news?

A. No. Other than it being on the news, no.

Based on both attorneys' references to [Alphonse's] state of mind as excited and emotional, it is apparent that the prosecutor sought to present [Alphonse's] statement as an excited utterance under MRE 803(2), and defense counsel evidently believed that the statement qualified as an excited utterance. Regardless of whether the statement actually qualifies as an exited utterance under MRE 803(2), it is not reasonably probable that defendant was prejudiced by the testimony. The record reveals that defense counsel adequately addressed the testimony during his subsequent cross-examination of Skladzien and [Alphonse]. When questioning Skladzien, defense counsel clarified that she was aware of no reason why [Alphonse] would make the statement "other than it being on the news." Subsequently, during [Alphonse's] cross-examination, defense counsel elicited that [Alphonse], while "in [an] excited state of mind," made the statement to Skladzien only "because [defendant] was charged with the crime." Counsel's cross-examination established that [Alphonse] admittedly knew nothing about the facts underlying the charges and that the statement was not based on [Alphonse's] knowledge of any evidence linking defendant to the crime. Defense counsel established that [Alphonse] had made the statement only because defendant had been arrested. Consequently, defendant cannot establish that he was prejudiced by defense counsel's handling of Skladzien's testimony. Accordingly, defendant cannot establish a claim of ineffective assistance of counsel in this regard.

Further, defendant's reliance on MRE 701 is misplaced. Contrary to what defendant argues, [Alphonse's] statement, as relayed through Skladzien, did not express an opinion that defendant was capable of murder. Rather, [Alphonse] made a statement after hearing that defendant had been arrested for the crime, he clearly had no other information, and his statement was not related to any particular observations or findings. Because there was no basis for an objection based on MRE 701, defendant cannot establish a claim of ineffective assistance of counsel. Counsel is not required to make a futile objection. See People v. Snider, 239 Mich. App. 393, 425 (2000).

*Pozniak*, 2013 WL 331564, at *3–4.

This decision was reasonable. Ineffective-assistance claims are reviewed under the two-part test derived from *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. *Id*. at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The potential unfair prejudice here was the danger that the jury would believe from Skladzien's testimony that Petitioner's father had additional undisclosed information indicating that Petitioner committed the crime. Defense counsel's subsequent examination of the witness dispelled any such danger. When asked, "[a]s far as you know, the only reason [Alphonse] made that statement is because he heard that his son had been arrested for this charge," Skaldzien answered, "Yes." ECF No. 18, Ex. 3 at 113–14. Alphonse Pozniak himself explained that he did not have any information regarding his son's guilt, but that he apologized to Skaldzien "just because [Petitioner] was charged with the crime." ECF No. 18, Ex. 4 at 113–14. Accordingly, the manner in which Petitioner's trial counsel examined the witnesses effectively eliminated the possibility that the jury believed that Alphonse had undisclosed information regarding his son's guilt.

Finally, the state court's determination that no lay opinion testimony was admitted was correct. At no point did Alphonse or Skaldzien testify that Alphonse held an opinion regarding Petitioner's guilt. Again, defense counsel very effectively elicited testimony from Alphonse that he had no knowledge at all regarding that evidence of Petitioner's guilt or innocence. ECF No. 18, Ex. 4 at 114. Given this record, the Michigan Court of Appeals did not unreasonably apply the *Strickland* standard in finding that counsel's performance was not deficient. The claim is therefore without merit.

### C.

Petitioner's remaining claims were presented to the state courts in Petitioner's motion for relief from judgment and the appeal that followed it. While the trial court denied Petitioner's motion after rejecting the claims on the merits, the Michigan Court of Appeals denied relief because Petitioner "allege[d] grounds for relief that could have been raised previously and . . . failed to establish both good cause for failing to raise the issues and actual prejudice from the irregularities alleged, and ha[d] not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b)." *People v. Pozniak*, No. 328852 (Mich. Ct. App. Sept. 17, 2015).

A federal habeas court ordinarily will not review a petitioner's claims if he "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To determine whether the state court rejected a petitioner's claim on procedural grounds, a court looks to 'the last reasoned state court opinion to determine the basis for the state court's rejection of the petitioner's claim.'" *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012) (quoting *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)). Furthermore, the court must presume that, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting

the same claim rest upon the same ground." *Guilmette*, 624 F.3d at 291-92 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Here, the Michigan Court of Appeals' order denying Petitioner leave to appeal was the last reasoned state court opinion to reject Petitioner's third through eighth claims. The state appellate court rejected these claims under Michigan Court Rule 6.508(D)(3), "which is an independent and adequate state ground sufficient for procedural default that required [Petitioner] to raise these claims during his direct appeal." *Amos*, 683 F.3d at 733.

Where, as here, a petitioner has procedurally defaulted his claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

In his seventh habeas claim, Petitioner argues that appellate counsel's ineffectiveness caused his procedural default. Appellate counsel, however, is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).

Where appellate counsel "presents one argument on appeal rather than another . . . the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present'" to establish ineffective assistance of counsel. *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)). Because the claims Petitioner raised on post-conviction review are not "clearly stronger" than the ones raised by appellate counsel on direct

review, appellate counsel was not ineffective during Petitioner's direct appeal, and therefore Petitioner cannot demonstrate cause.

**1.**

Petitioner's third habeas claim asserts that he was denied his right to counsel at the photographic line-up identification procedure. The claim is plainly meritless, and certainly not clearly stronger than the ones raised by appellate counsel on direct appeal. A criminal defendant has no federal constitutional right to have counsel present at an investigative photographic identification procedure at which he is identified. *United States v. Ash*, 413 U.S. 300, 321 (1973); *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000) (explaining that "although the Sixth Amendment gives a criminal defendant the right to have counsel present at an in-person lineup after the initiation of criminal proceedings against him, there is no corresponding Sixth Amendment right to counsel during a photographic display").

**2.**

Petitioner asserts in his fourth habeas claim that the investigating officer and the prosecutor distorted the evidence and made false statements regarding footprints observed around the victim's residence. This claim is also not clearly stronger than the ones raised on direct appeal. At trial, one police officer testified that he saw a set of footprints that led up to a window of the victim's residence and stop there.[2] ECF No. 18, Ex. 3 at 68. Petitioner infers from this testimony that the perpetrator gained entry from this window, contrary to the prosecutor's theory of the case that Petitioner was let into the house by the victim. Meanwhile, the officer in charge, Detective Robert Eidt, testified that he saw a set of footprints lead to a window that was too small to be a point of entry, and that the footprints continued farther. ECF No. 18, Ex. 5 at 18–19. Eidt also testified that

---

[2]There was a significant snow storm the day prior to the crime. ECF No. 18, Ex. 5 at 17–18.

he checked all possible points of entry, including all windows, found them all locked, and that "[n]othing appeared to be pried open or even attempted to be pried open." *Id.* at 21–22. Eidt opined that the previous officer did not have the same opportunity to investigate the scene as he did. *Id.* at 19. Furthermore, a meter reader had been on the premises and walked around the house. *Id.* at 20–21. Eidt opined that all the footprints found in the snow around the house were accounted for. *Id.* at 22.

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). The record reveals at most that there was a conflict in the testimony between two officers. The prosecutor sought to explain the disparity during the examination of Eidt. The prosecutor certainly was not obligated to accept the testimony that was most favorable to Petitioner and disregard Eidt's testimony regarding the footprints. There was no misconduct, and Petitioner's appellate counsel was not ineffective for failing to raise this claim on direct appeal.

### 3.

In his fifth claim, Petitioner asserts that the trial court lacked jurisdiction to try him. In his related sixth and eighth claims Petitioner advances the argument that his counsel abandoned him by failing to assert the jurisdictional challenge and that the prosecutor committed misconduct by proceeding in a court without jurisdiction. In addressing these claims on collateral review, the trial court found that it had jurisdiction over Petitioner's case. ECF No. 18, Ex. 13 at 4. The determination of whether a state court is vested with jurisdiction under state law is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); *Wright v. Angelone*, 151 F.3d 151, 157-58 (4th Cir. 1998). A state court's interpretation of state

jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review. *See Strunk v. Martin*, 27 Fed. Appx. 473, 475 (6th Cir. 2001). Given the state court's finding that it had jurisdiction—a determination that cannot be second-guessed here—Petitioner's appellate counsel was not ineffective for failing to raise this claim on direct review.

Accordingly, Petitioner's third through eighth claims are barred from review by Petitioner's state court procedural default and Petitioner's failure to demonstrate cause to excuse the default. As all of Petitioner's claim are without merit or barred from review, the petition will be denied.

**D.**

On March 20, 2018, Petitioner filed motion for discovery, seeking to gather information and photographs related to the footprints found around the victim's home. ECF No. 21. Habeas Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings "if and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." Rules Governing Section 2254 Cases in the United States District Courts, R. 6(a). However, "habeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)).

Petitioner has failed to demonstrate good cause for the requested discovery. Petitioner's claim that the prosecutor committed misconduct regarding the footprints is procedurally defaulted and without merit for the reasons stated above. The conflict in testimony between the two officers

was an issue fully explored and argued by the parties at trial. Accordingly, discovery is not warranted.

**IV.**

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of his claims. The Court will therefore deny a certificate of appealability with respect all of Petitioner's claims. The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, it is **ORDERED** that Petitioner Pozniak's petition for a writ of habeas corpus, ECF No. 1., is **DENIED with prejudice.**

It is further **ORDERED** that Petitioner Pozniak's motion for discovery, ECF No. 21, is **DENIED.**

It is further **ORDERED** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.

Dated: May 15, 2018                                       s/Thomas L. Ludington
                                                                    THOMAS L. LUDINGTON
                                                                    United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 15, 2018.

                                          s/Kelly Winslow
                                          KELLY WINSLOW, Case Manager